# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-20714

United States Court of Appeals
Fifth Circuit

**FILED**

October 10, 2019

Lyle W. Cayce
Clerk

A. B., by and through his next friends, Jamie B. and Nicole B.,

>    Plaintiff - Appellee

v.

CLEAR CREEK INDEPENDENT SCHOOL DISTRICT,

>    Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-2382

Before KING, HIGGINSON, and DUNCAN, Circuit Judges.

PER CURIAM:*

Clear Creek Independent School District appeals the district court's denial of its motion for summary judgment. Reviewing the district court's factual findings for clear error, we AFFIRM.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-20714

## I.

## A.

The Individuals with Disabilities Education Act (IDEA) grants federal funding to states that provide "[a] free appropriate public education . . . to all children with disabilities." 20 U.S.C. § 1412(a)(1)(A). Under the IDEA, a child with disabilities is entitled to an "individualized education program" crafted by a "team" that includes the child's parents, the child's teachers, representatives of the child's school district, and other people with "knowledge or special expertise regarding the child." *Id.* §§ 1412(a)(4), 1414(d)(1)(B).

Relevant to this appeal is the IDEA's requirement that states educate children with disabilities in the "least restrictive environment":

> To the maximum extent appropriate, children with disabilities . . . [must be] educated with children who are not disabled, and . . . removal of children with disabilities from the regular educational environment [must] occur[] only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

§ 1412(a)(5). Parents who wish to challenge the educational placement of their children are entitled to impartial hearings, *see id.* § 1415(b)(6), (f)(1)(A), and the statute provides that, during the pendency of any such proceedings, the child's then-current placement is not to be disturbed, *see* § 1415(j).

## B.

This case concerns the education of A.B., an elementary-school student within the Clear Creek Independent School District. Because of A.B.'s diagnoses of autism, attention-deficit/hyperactivity disorder, and speech impairment, the school district provided him with special education and services under the IDEA.

The school district offers three special-education programs, two of which—Learning to Learn and Social Communication—are at issue in this

No. 18-20714

case. The Learning to Learn program concentrates on teaching communication and social skills, whereas the Social Communication program is for higher-functioning students who are more able to benefit from an academic curriculum. Students in the Social Communication program mostly spend their time in general-education classes but also receive separate instruction in social skills.

In the 2014-2015 school year, A.B. was in the first grade and attended classes in the Learning to Learn program. The program was evidently successful; A.B. progressed academically and linguistically, and his behavioral problems abated. Indeed, A.B. did so well that in March 2015, his IDEA team agreed to promote him to the Social Communication program for the following year.

That year, second grade, was also a success. With the special-education support provided by the school district, A.B. continued to make academic and behavioral progress, and his team decided that A.B. should remain in the Social Communication program.

The present dispute began when A.B. was in the third grade. That year, A.B.'s individualized education program had him primarily attending classes in the general-education classroom with the in-class assistance of a special-education aide. Although present and learning alongside his third-grade peers, A.B. was following a modified curriculum and was not expected to keep pace academically with his classmates. Moreover, he primarily focused his attention on, and learned from, the special-education support staff rather than the main classroom teacher.

At the beginning of the school year, A.B.'s behavior took a turn for the worse. He increasingly avoided doing his work in favor of various unproductive, and sometimes disruptive, activities, which ranged from going to the bathroom frequently and playing with the window blinds to flopping on the floor and

screaming. On occasions when he was disruptive, A.B. would be temporarily removed from the general-education classroom.

In October 2016, A.B.'s team convened and recommended, over his parents' objection, that A.B. be placed back into the Learning to Learn program for his core academic classes. His parents, concerned that A.B.'s behavior would only deteriorate further in the Learning to Learn environment, filed an administrative complaint in November 2016, alleging that the proposed move would violate the IDEA by not placing A.B. in the "least restrictive environment."

That forestalled A.B.'s transfer, and so he remained in the general-education classroom for the rest of the school year. During that time, with the assistance of plans put in place by the school district to address some of his struggles, A.B.'s behavior improved substantially. By spring, he had ceased engaging in most of the misbehavior that had cropped up at the beginning of the school year. He also continued to progress academically.

## C.

The administrative complaint was heard by a special-education hearing officer in May 2017. On July 7, 2017, the hearing officer found that removing A.B. from the general-education classroom would violate the IDEA and ordered the school district to "maintain [A.B.]'s placement in the general education classroom with [special-education] supports."

A.B.'s parents then filed the present lawsuit, seeking attorney's fees as prevailing parties under the IDEA. *See* § 1415(i)(3)(B)(i)(I). The school district countersued, seeking reversal and vacatur of the hearing officer's decision, and moved for summary judgment.

The district court denied the school district's request that it reverse and vacate the hearing officer's decision, though it reserved judgment as to the attorney's-fees issue. The court found that "A.B. received positive, nontrivial,

No. 18-20714

academic and nonacademic benefits when placed in a classroom in a general educational setting." And although A.B. was academically behind his classmates, the court found that "his progress remained consistent and markedly improved in a general educational setting." As a result, the court concluded that removing A.B. from the general-education class would be inconsistent with IDEA's "least restrictive environment" requirement.

The school district timely appealed.

## II.

Before reaching the merits, we confirm that we have jurisdiction to hear this appeal. Under 28 U.S.C. § 1291, we have jurisdiction over appeals from "final decisions" of the district courts within this circuit. A.B. argues that we lack jurisdiction here, because the decision below was merely the denial of a motion for summary judgment, and no final judgment has been entered in the case. What is more, A.B. points out, the district court has not yet determined his entitlement to attorney's fees—the central issue in the complaint.

The denial of a motion for summary judgment is indeed not ordinarily appealable. But this was no ordinary summary-judgment motion. Its label notwithstanding, "the procedure [was] in substance an appeal from an administrative determination, not a summary judgment." *Capistrano Unified Sch. Dist. v. Wartenberg ex rel. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995); *see also Rockwall Indep. Sch. Dist. v. M.C.*, 816 F.3d 329, 337 n.4 (5th Cir. 2016) ("[T]he motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." (quoting *Heather S. ex rel. Kathy S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997))). By denying the school district's motion for summary judgment, the district court was, in effect, affirming the hearing officer's decision. All that remained for the district court was to decide the question of attorney's fees.

5

No. 18-20714

And an outstanding request for attorney's fees does not divest us of jurisdiction. In *Budinich v. Becton Dickinson & Co.*, the Supreme Court adopted a "bright-line rule" that "a decision on the merits is a 'final decision' for purposes of § 1291 whether or not there remains for adjudication a request for attorney's fees attributable to the case." 486 U.S. 196, 202-03 (1988). In so ruling, the Court expressly refused to make an exception for "cases in which the plaintiff had specifically requested attorney's fees as part of the prayer in his complaint," noting that the appealability of an otherwise final order "should not turn upon the characterization of those fees by the statute or decisional law that authorizes them." *Id.* at 201.

The present appeal goes to the merits of the district court's order effectively affirming the hearing officer's decision. That order was final for purposes of § 1291, and so we have jurisdiction over this appeal.

## III.

## A.

When reviewing an administrative decision under the IDEA, "the district court is to give 'due weight to the hearing officer's findings, [but] . . . must ultimately reach an independent decision based on a preponderance of the evidence.'" *Lisa M. v. Leander Indep. Sch. Dist.*, 924 F.3d 205, 213 (5th Cir. 2019) (quoting *Dall. Indep. Sch. Dist. v. Woody*, 865 F.3d 303, 309 (5th Cir. 2017)). In turn, we review the district court's legal determinations de novo but review its "findings of underlying fact . . . for clear error." *Houston Indep. Sch. Dist. v. V.P. ex rel. Juan P.*, 582 F.3d 576, 583-84 (5th Cir. 2009) (quoting *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F. ex rel. Barry F.*, 118 F.3d 245, 252 (5th Cir. 1997)). "Under the clear error standard, we will not reverse the district court's findings unless we are 'left with a definite and firm conviction that a mistake has been committed.'" *Lisa M.*, 924 F.3d at 213 (quoting *Juan P.*, 582 F.3d at 583).

No. 18-20714

## B.

The principal issue in this appeal is whether the school district's proposed placement of A.B. back into the Learning to Learn program would comport with the IDEA's requirement that children be educated in the "least restrictive environment." That question is answered in two steps: "First, we ask whether education in the regular classroom, with the use of supplemental aids and services, can be achieved satisfactorily . . . . If it cannot . . . , we ask, second, whether the school has mainstreamed[1] the child to the maximum extent appropriate." *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1048 (5th Cir. 1989) (citation omitted).[2]

Several inquiries inform the determination of whether a school district "can achieve education in the regular classroom satisfactorily." *Id.* Preliminarily, we ask "whether the state has taken steps to accommodate the [child with disabilities] in regular education." *Id.* This question can be dispositive: "If the state has made no effort to take such accommodating steps, . . . the state is in violation of the Act[.]" *Id.* By contrast, "[i]f the state is providing supplementary aids and services and is modifying its regular education program," the inquiry becomes "whether [the state's] efforts are sufficient." *Id.*

In describing the efforts that a state must make, we have noted that

the Act does not require regular education instructors to devote all or most of their time to one . . . child or to modify the regular education program beyond recognition. If a regular education instructor must devote all of her time to one [child with disabilities], she will be acting as a special education teacher in a

---

[1] "Mainstreaming" refers to educating a child with disabilities in a general-education class.

[2] *Daniel R.R.* construed the Education of the Handicapped Act, the IDEA's statutory predecessor. The relevant language is unchanged between the two statutes, except that the law now refers to "children with disabilities" rather than to "handicapped children." *Compare* § 1412(a)(5)(A), *with Daniel R.R.*, 874 F.2d at 1044 (quoting former statute).

regular education classroom. Moreover, she will be focusing her attentions on one child to the detriment of her entire class . . . .

*Id.* at 1048-49.

Pertinent considerations for determining whether "education in the regular classroom can[] be achieved satisfactorily" include: (1) "whether the child will receive an educational benefit from regular education"; (2) "the child's overall educational experience in the mainstreamed environment, balancing the benefits of regular and special education for each individual child"; and (3) "what effect the . . . child's presence has on the regular classroom environment and, thus, on the education that the other students are receiving." *Id.* at 1049-50.[3]

In *Daniel R.R.* itself, the needs of the child in question would have required the instructor to "modify the curriculum beyond recognition" and to "devote all or most of her time to" that child. *Id.* at 1050-51. And we determined that "[r]egular education not only offers [the child] little in the way of academic or other benefits, [but] also may be harming him." *Id.* at 1051. Consequently, we ruled that the child in question did not need to be educated in the regular classroom.

## C.

In this case, it is undisputed that the school district has attempted to accommodate A.B. in the general-education setting. Hence, the question is whether, with the aid that the school district has provided, A.B. can be satisfactorily educated in the regular classroom. The district court found that A.B. "exhibited the most progress" and "received positive, nontrivial, academic and nonacademic benefits" in the general-education classroom. It noted that A.B. "is no longer disruptive in a disciplinary sense." And it found a lack of

---

[3] These "do not constitute an exhaustive list of factors relevant to the mainstreaming issue. Moreover, no single factor is dispositive in all cases." *Daniel R.R.*, 874 F.2d at 1048.

evidence that A.B. would "entirely absorb a teacher's time and create an undue burden, especially with a paraprofessional providing in-class . . . support." Given these factual findings, the district court was correct to conclude that the school district was able to—and thus was required to—educate A.B. satisfactorily in the general-education environment.

The school district does not dispute that A.B. made progress in the regular classroom. Rather, it argues that his progress was entirely the result of his modified curriculum and paraprofessional support, such that his success had nothing to do with his being in a general-education environment.

That argument misapprehends the relevant legal question. "We ask whether education in the regular classroom, with the use of supplemental aids and services, can be achieved satisfactorily." *Daniel R.R.*, 874 F.2d at 1048. The evidence here is that it could. A.B. does not need to demonstrate that he was receiving a special benefit *from* the general-education setting in order to merit being placed there; the preference for general education is built into the IDEA. As we said in *Daniel R.R.*, our analysis goes beyond "whether the student will gain any educational benefit from regular education" because "educational benefits are not mainstreaming's only virtue." *Id.* at 1047.

The school district's argument is also contradicted by the record. The district court found both that A.B.'s academic progress was "markedly improved in a general educational setting" and that A.B.'s behavior and social skills had similarly improved due to A.B.'s ability to model the conduct of his general-education classmates. There is no doubt that A.B. was largely benefitting from the attention and personalized instruction that he received, but that does not mean that he would have done just as well in the Learning to Learn classroom, where student behavior was markedly worse. As noted by the district court, one Learning to Learn teacher opined that placing A.B. back

into that environment would "likely cause him to regress." The school district offers no reason to believe that these factual findings were erroneous.

The school district argues that the aid that it has given A.B. goes beyond what the IDEA requires, citing *Brillon v. Klein Independent School District*, 100 F. App'x 309 (5th Cir. 2004). In that case, a teacher testified that educating the child in question in the general-education class would require "chang[ing] the curriculum beyond recognition" and creating "a classroom within a class," and we held that placing that child in special education was proper. *Id.* at 313. The child in *Brillon*, however, was "not making academic progress in the general education setting" and clearly "perform[ed] better in the special education setting." *Id.* at 314. Moreover, we could not discern whether the child was receiving any "social benefit from general education." *Id.* Those circumstances, which were critical to our decision, readily distinguish *Brillon* from the present appeal.

Finally, the school district argues that, although "A.B. is not disruptive in the traditional sense of the word," the one-on-one support that A.B. receives is "clearly a distraction to the other twenty plus students even if it is not always disruptive." But the school district identifies nothing in the record that indicates clear error as to the district court's and the hearing officer's opposite findings.

## IV.

The record demonstrates that A.B. can be, and has been, educated satisfactorily in the regular classroom. Consequently, his proposed removal to a special-education program would violate IDEA's requirement that students be educated in the "least restrictive environment." *See* § 1412(a)(5)(A). The order of the district court is AFFIRMED.